IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHRISTOPHER BERRY THOMAS                                    PLAINTIFF

v.                           No. 4:17-cv-497-DPM

SOUTHERN BANCORP BANK                                       DEFENDANT

## MEMORANDUM OPINION and ORDER

**1.** After the death of a wealthy matriarch, her son and grandson made competing claims to a $100,000 certificate of deposit issued long before by Southern Bancorp's predecessor. The son threatened to sue. The bank paid him, receiving an indemnity agreement in return. This case is the grandson's answering suit against Southern Bancorp.

In 1998, Mary Berry opened a $100,000 certificate of deposit at First National Bank of Blytheville. CD No. 55594 named Mary Berry — the Grandmother — and Kenneth Berry Jr. — the Son — as joint tenants with right of survivorship. The CD stated on its face that it was "NOT NEGOTIABLE" and "NOT TRANSFERABLE." № 31-1. For about six years, the bank issued interest checks and renewal notices in the names of Grandmother and Son. Grandmother had many CDs at the bank. She did her business there in person. In February 2005, Christopher Berry Thomas — the Grandson — replaced Son on the interest checks and renewal notices for CD No. 55594. For more than a decade, the bank

issued these checks and notices in the names of Grandmother and Grandson. № 42 at 8–11. These renewal notices, addressed to both Grandmother and Grandson, stated that "your certificate will mature" and "your certificate of deposit (CD) number \*\*\*\*\*\*\*\* 594 will automatically renew . . .[.] " № 42 at 11–12. Like all the CD-related mailings, the notices were sent to Grandmother's home. Grandmother died in November 2014. Grandson continued to cash the interest checks after her death. № 41-2 at 1. In December 2015, Grandson demanded payment on the CD, along with two other CDs, from Southern Bancorp, which had acquired First National. Son also demanded payment, threatening a lawsuit. № 42 at 16–17. Neither Grandson nor Son presented the original CD to the bank. It never surfaced. The bank was faced with conflicting internal records—its computer system, along with renewal statements and interest checks, showed Grandson as the owner; the bank's vault copy of the CD showed Son as the owner. Southern Bancorp paid about $105,000 to Son in December 2015. Son agreed to indemnify the bank if someone else was entitled to the CD proceeds. № 42 at 14. The bank's form closing the account listed the CD's owners as "Mary Berry, Christopher Thomas or Kenneth Berry." № 42 at 13.

These are the material facts, taken in Grandson's favor where genuinely disputed, on Southern Bancorp's renewed motion for summary judgment. *Woods v. DaimlerChrysler Corporation*, 409 F.3d 984,

990 (8th Cir. 2005). The Court granted the bank's original motion on Grandson's fraud claim, denied the original motion on his contract-based claims, and directed more discovery to fill out the record so the Court could decide whether there were any issues for a jury. The discovery was done. And Southern Bancorp has renewed its request for judgment as a matter of law on the rest of the case.

**2.** The first difficulty for Grandson's contract-based claims is that the breach claim belonged to Grandmother, then her estate, not Grandson. The CD was a contract between Grandmother and the bank. And the estate did not pursue this claim, perhaps because both of Mary Berry's children (Son and Grandson's mother) were the co-executors.

The bank argues that Grandson could not have been an owner of the CD. The vault copy of the certificate named Grandmother and Uncle as joint tenants with right of survivorship. Under Arkansas law, the designation of ownership in an account document, including a CD, "shall be conclusive evidence in any action or proceeding involving the deposit account of the intention of all depositors to vest title to the deposit account in the manner specified in the account documents." ARK. CODE ANN. § 23-47-204(b)(3). And, in the absence of fraud, the surviving joint tenant owns the account by operation of law. *Williams v. Davis*, 2009 Ark. App. 850, at 7–8, 373 S.W.3d 381, 386. While the statute may answer the question about the ownership of the now-lost CD No. 55594, it does not address Grandson's deeper point.

-3-

Grandson contends that he was a third-party beneficiary of a contract between Grandmother and the bank made in late 2004 or early 2005 to cash out CD No. 55594 and create a new CD naming Grandson instead of Son the co-owner. To reach the jury, Grandson must offer sufficient evidence that Grandmother and First National made an enforceable contract. And he must show "substantial evidence of a clear intention to benefit [him]." *Perry v. Baptist Health*, 358 Ark. 238, 244–45, 189 S.W.3d 54, 58 (2004).

There's no document or note reflecting an agreement between Grandmother and the bank to make Grandson a co-owner of the CD. *№ 42 at 14*. But the bank's computer system showed Grandson instead of Son as one of the CD's owners. And it's undisputed that the bank sent interest checks and renewal notices to Grandmother and Grandson at her home address for more than ten years. The checks named them both. The bank's 30(b)(6) witness agreed that, other than one instance involving a recurring charitable donation that she knew about, interest flows to an account's owners. And the notices referred repeatedly to the CD as "your certificate."

Grandson also offers affidavits from his mother, Melinda Porter, and his Grandmother's sister, Margaret Childers. *№ 41-1 & № 41-3*. The bank points out that most all this testimony is inadmissible. Statements about what Grandmother told them about the CD and the interest checks are hearsay, not within any exception. Attached to one

of the affidavits, there's a note — "This is for Christopher on my death 9-11-09" — seemingly handwritten by Grandmother on an envelope containing a CD statement. *№ 41-1 at 3*. The note is also inadmissible hearsay. Grandmother's remarks and the note don't prevent summary judgment. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

Grandson doesn't need the hearsay, though. Based on the rest of the record, taken in the light most favorable to Grandson, a reasonable jury could find that Grandmother and the bank had an agreement to make Grandson a co-owner of the CD, and that the bank failed to properly implement the ownership change. Grandmother's sister says she often accompanied Grandmother to the bank, where she did her business in person. In the mid-2000s, Grandmother made several CD ownership changes favoring Grandson in her many CDs. The original CD No. 55594 has never been found. And years and years of renewal statements and interest checks listed Grandson as a co-owner. One reasonable inference from the whole is that the bank fumbled on this CD. Another, of course, is that it did not — see, for example, the absence of any bank document about a requested ownership change. A jury must decide.

Grandson also argues that promissory estoppel applies. He must establish this claim "strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment." *K.C. Properties of N.W.*

-5-

*Arkansas, Inc., v. Lowell Investment Partners, LLC*, 373 Ark. 14, 30, 280 S.W.3d 1, 14 (2008). There's not enough evidence to support a verdict for Grandson on this alternative theory.

**3.** The second difficulty for Grandson is the calendar. The statute of limitations for breach of a written contract is five years; for an oral contract, it's three years. ARK. CODE ANN. §§ 16-56-111 & 16-56-105. The new CD should have been created, Grandson says, in late 2004 or early 2005. He sought payment in 2015, some ten years later.

No fraudulent concealment occurred. That defense requires "something more than a continuation of a prior nondisclosure[;]" there must be some "furtively planned and secretly executed" scheme. *Meadors v. Still*, 344 Ark. 307, 315–16, 40 S.W.3d 294, 300–01 (2001). There's no evidence the bank prevented Grandmother or Grandson from reviewing all the bank's account information and discovering the conflicting ownership information. No scheme was involved.

Grandson also says the bank should be estopped from invoking the limitation period. Estoppel tolls the statute when a party's actions "have fraudulently or inequitably invited a party to delay commencing legal action until the relevant statute of limitations has expired, or when he has done anything that would lull the other party into inaction so that his vigilance is relaxed." *Taylor v. Taylor*, 2009 Ark. App. 605, at 7–8, 343 S.W.3d 335, 339. The bank must have known the facts; it must have intended that its conduct be acted on, or must have acted so

Grandson had a right to believe the bank so intended; Grandson must have been ignorant of the facts; and Grandson must have relied on the bank's conduct to his detriment. *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 27–28, 270 S.W.3d 369, 374 (2007). Whether estoppel applies is usually for the trier of fact. *Taylor*, 2009 Ark. App. at 8.

There is no sound fraud basis for an estoppel. But a jury could find that the bank's actions over the course of a decade lulled Grandmother and Grandson into inaction. According to a record that appears to be from Southern Bancorp's predecessor, Grandmother had extensive dealings with the bank and owned more than a dozen CDs. № 42 *at 7*. She and Grandson could have reasonably expected the bank to properly carry out Grandmother's alleged wishes in issuing a new CD. *Corning Bank v. Rice*, 278 Ark. 295, 298–99, 645 S.W.2d 675, 677 (1983). Coupled with the more than ten years of interest checks and renewal notices in Grandson's name for the disputed CD, the estoppel question presented is best answered by a jury, too.

\* \* \*

Southern Bancorp's second motion for summary judgment, № 29, is denied. A Third Amended Final Scheduling Order setting a new trial date will issue.

So Ordered.

*D.P. Marshall Jr.* (signature)
D.P. Marshall Jr.
United States District Judge

20 August 2019